UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DANILO L.,

                          Plaintiff,

v.                                                              3:19-CV-838
                                                                (TWD)
ANDREW SAUL, COMMISSIONER OF SOCIAL
SECURITY,

                          Defendant.
_____

APPEARANCES:                                        OF COUNSEL:

LACHMAN & GORTON                           DOROLLO NIXON JR., ESQ.
  *Counsel for Plaintiff*
1500 East Main Street
P.O. Box 89
Endicott, New York 13761

U.S. SOCIAL SECURITY ADMIN.              MONIKA K. CRAWFORD, ESQ.
  *Counsel for Defendant*
Office of Regional General Counsel
26 Federal Plaza - Room 3904
New York, New York 10278

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## MEMORANDUM DECISION AND ORDER

         Currently before the Court, in this Social Security action filed by Danilo L. ("Plaintiff")

against the Commissioner of Social Security ("Defendant" or the "Commissioner") pursuant to

42 U.S.C. § 405(g), are Plaintiff's motion for judgment on the pleadings and Defendant's motion

for judgment on the pleadings.  (Dkt. Nos. 16, 19.)  For the reasons set forth below, Plaintiff's

motion for judgment on the pleadings is denied and Defendant's motion for judgment on the

pleadings is granted.  The Commissioner's decision denying Plaintiff's disability benefits is affirmed, and Plaintiff's complaint is dismissed.

## I.     BACKGROUND

This Social Security appeal concerns whether Defendant correctly concluded Plaintiff is not eligible for Social Security income ("SSI") benefits because of his immigration status.  Prior to the current application, Plaintiff had received SSI payments from October 2011 through August 2012.  (Administrative Transcript[1] at 69.)  Plaintiff's benefits stopped after he was incarcerated in 2012.  (T. 24, 72.)  Originally, a field office employee incorrectly coded Plaintiff's immigration status as a United States citizen.  (T. 67.)

On April 14, 2015, upon release from incarceration, Plaintiff protectively filed for SSI payments.  (T. 32-40.)  In his application, Plaintiff stated he was not a U.S. citizen or national, but was lawfully admitted for permanent residence under the Immigration and Nationality Act ("INA").  (T. 32.)  Plaintiff alleged he had lived in the U.S. since June 1, 1980.  (T. 33.)

On November 30, 2015, the Social Security Administration ("SSA") sent Plaintiff a letter advising him it needed additional information to decide if it could pay him SSI.  (T. 43-44.) Under the subheading "Things We Need," the letter advised Plaintiff to "Submit [Plaintiff's] U.S. Naturalization certificate, U.S. passport, or evidence of [his] lawful admission to the U.S." (T. 43.)

On June 15, 2016, the SSA sent a letter indicating it had not received proof of Plaintiff's permanent resident status, and requested Plaintiff submit the necessary information.  (T. 45-46.) The letter stated Plaintiff's claim would be denied if he did not send in the appropriate

---

[1]  The Administrative Transcript is found at Dkt. No. 13 and will be referred to herein as "T." Cites to the Administrative Record are to the Bates-stamped page numbers, not the numbering the Court's ECF system automatically assigns.

documentation before July 5, 2016.  (T. 45.)  On July 8, 2016, the agency sent Plaintiff an

informal decision finding he was not eligible for SSI because he could not prove he was an

eligible alien.  (T. 47-50.)

      Plaintiff requested reconsideration on August 2, 2016, and submitted an employment

authorization card (I-766) with the request.  (T. 51, 66-67.)  The I-766 card was valid from April

22, 2016, through April 21, 2017, and stated it was not evidence of U.S. citizenship or permanent

residence.  (T. 65.)  The SSA submitted a request to the Department of Homeland Security

("DHS") through the SAVE program on October 21, 2016, to verify the I-766.  (T. 57.)  DHS

responded that Plaintiff entered the U.S. on June 2, 1980 from Cuba, and indicated a status of

"TEMPORARY EMPLOYMENT AUTHORIZED."  (T. 57.)

      The SSA then submitted a form G-845 Supplement Verification Request asking DHS

whether Plaintiff was currently a lawful permanent resident, and if not, whether he was a lawful

permanent resident in the past and for what dates.  (T. 58-59.)  Specifically, the SSA asked

whether Plaintiff was admitted as a Cuban/Hatian entrant, and if so, under what category.  (T.

59.)  DHS returned the G-845 form incomplete because there was no legible immigration

document submitted.  (T. 67.)

      The SSA sent Plaintiff a letter on March 30, 2017, informing him the agency needed

evidence of his lawful admission to the U.S.  (T. 68.)  The letter specifically asked for Plaintiff's

"U.S. Naturalization certificate, U.S. passport, or evidence of [his] lawful admission to the U.S."

*Id.*

      On October 4, 2017, the agency sent Plaintiff a notice advising him his hearing with

Administrative Law Judge ("ALJ") Jennifer Gale-Smith was scheduled for January 25, 2018.  (T.

97.)  The notice advised Plaintiff "[t]he specific issue is whether you are a citizen or national of

3

the United States, an alien lawfully admitted for permanent residence in the United States, or an

alien permanently residing in the United States under color of law." (T. 98.) The notice also

included a section describing the process to request a subpoena. *Id.*

On January 24, 2018, Plaintiff's counsel submitted a letter to the ALJ alleging Plaintiff

was eligible for SSI payments as a lawful permanent resident who had completed at least 40

quarters of work. (T. 154.) The letter also alleged Plaintiff was a refugee from Cuba, who had

been in the U.S. for almost 40 years and who could not lawfully be deported to his home country

under federal law. *Id.*

Plaintiff's counsel appeared at the hearing on January 25, 2018; Plaintiff was also present

but did not appear on the record or testify. (T. 15-31.) At the hearing, the ALJ stated she would

not insist on Plaintiff's testimony because she needed specific documents to adjudicate his claim.

(T. 24.) Plaintiff's counsel acknowledged his testimony would be irrelevant to whether he was

eligible. (T. 18.) At one point, Plaintiff's counsel asked whether the ALJ could obtain

documentary evidence of Plaintiff's immigration status from the federal immigration agencies

and the ALJ responded that she did not know where Plaintiff's documentation would be, and that

it was Plaintiff or his counsel's duty to present such evidence. (T. 20-21.) The ALJ asked

Plaintiff's counsel how much time he needed to get the necessary documentation. (T. 26.) The

ALJ asked Plaintiff's counsel if a month would be enough time or if he needed more than a

month. *Id.* Plaintiff's opined he needed at least a month, to which the ALJ stated she

understood. *Id.*

On February 27, 2018, an agency employee called Plaintiff's counsel to discuss obtaining

documentary proof of Plaintiff's immigration status. (T. 155.) On February 27, 2018, Plaintiff's

counsel sent the ALJ a letter noting he had been in contact with DHS and had made a request

under the Freedom of Information Act ("FOIA") to obtain the necessary documentation.  (T. 156.)  Plaintiff's counsel stated once he received the contents of Plaintiff's DHS file, he would remit the necessary documentation to the ALJ.  *Id.*

On February 28, 2018, the ALJ granted Plaintiff's counsel 10 additional days to submit evidence.  (T. 157.)  On March 5, 2018, Plaintiff's counsel sent another letter to the ALJ with an update as to the progress to obtain Plaintiff's immigration records.  (T. 158.)  Plaintiff's counsel noted DHS received the FOIA request and requested authorization and a sworn statement from Plaintiff about his identity.  *Id.*  Plaintiff's counsel advised that the process of providing such authorization and statement was "underway."  *Id.*

On March 20, 2018, Plaintiff's counsel provided the ALJ with another update as to the status of their FOIA request, enclosing a letter from DHS indicating that it would take up to 30 days to respond.  (T. 159-161.)

On April 24, 2018, at the request of the ALJ, an agency employee contacted Plaintiff's counsel regarding the immigration documentation that should have been received from the DHS. (T. 162.)  The agency employee advised Plaintiff's counsel that if the documents were not received prior to June 1, 2018, the ALJ would issue an adverse decision due to Plaintiff's failure to prove he was a qualified alien.  (T. 162.)  The ALJ sent Plaintiff's counsel a letter to the same effect on April 25, 2018, noting that if she did "not receive the documents by close of business June 1, 2018, [she] will issue a decision based on the information in the file."  (T. 163)

On April 30, 2018, Plaintiff's counsel sent a letter to the ALJ.  (T. 164.)  Plaintiff's counsel stated he was doing everything on his end to get of the necessary immigration documents.  *Id.*  The letter included the following sentence: "We do have a suggestion: since the

required documents happened to be in the possession of a collateral department within the Executive Branch, perhaps Your Honor can subpoena them?" *Id.*

On June 15, 2018, the ALJ issued an unfavorable decision, finding Plaintiff was not eligible for SSI because he did not produce evidence showing he was a qualified alien. (T. 13-14.) On June 20, 2018, Plaintiff requested review by the Appeals Council. (T. 165.) Plaintiff's appeal statement argued it was error for the ALJ to issue a decision without assisting Plaintiff in obtaining the immigration documents or to provide more time to do so. *Id.*

On July 20, 2018, the Appeals Council advised Plaintiff it had received the request for review of the ALJ's decision and Plaintiff could send additional information, including new and material evidence, and that the Appeals Council would not act for 25 days. (T. 7-8.) On May 21, 2019, the Appeals Council denied Plaintiff's request for review; the denial notice indicated Plaintiff had not submitted any additional evidence in the intervening time since the ALJ's decision had been issued. (T. 3-6.)

Plaintiff thereafter filed this action challenging Defendant's decision. (Dkt. No. 1.) Plaintiff argues the ALJ failed to fulfill her obligation to develop the record relative to his immigration status. (Dkt. No. 16 at 9-15.) Plaintiff also asserts the ALJ erred in ignoring his request to subpoena his immigration records from DHS. *Id.* at 15. Defendant argues substantial evidence supports the ALJ's decision and she did not commit any legal error. (Dkt. No. 19.)

## II.  DISCUSSION

### A.  Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v.*

*Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g) (2015); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  To facilitate the Court's review, an ALJ must set forth the crucial factors justifying her findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.  *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).  "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must be "more than a mere scintilla" of evidence scattered throughout the administrative record.  *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258 (citations omitted).  Where substantial evidence supports the ALJ's findings they must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [ALJ's]."  *Rosado*, 805 F. Supp. at 153.  In other words, a reviewing court

7

cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

### B.    Standard for Eligibility

To be found eligible for SSI, a claimant must be a resident of the United States and either a citizen of the United States or an alien lawfully admitted for permanent residence or otherwise permanently residing in the United States under color of law.  42 U.S.C. § 1382c(a)(1)(B)(i).  In general, most aliens must meet two requirements to be eligible for SSI.  Specifically, the noncitizen must be in a "qualified alien" category and meet an "exception condition" for qualified aliens.  *See* Social Security Administration Program Operations Manual System ("POMS") SI 00502.100A, available at https://secure.ssa.gov/apps10/poms.nsf/ lnx/0500502100; *see also* 8 U.S.C. § 1611; 8 U.S.C. § 1612; 8 U.S.C. § 1641(b).

A qualified alien is an alien in one of the following DHS statuses:

> 1. Lawfully admitted for permanent residence in the U.S.;

> 2. Granted conditional entry pursuant to section 203(a)(7) of the INA as in effect prior to April 1, 1980;

> 3. Paroled into the U.S. under section 212(d) (5) of the INA for a period of at least one year;

> 4. A refugee admitted to the U.S. under section 207 of the INA;

> 5. Granted asylum under section 208 of the INA;

> 6. An alien whose deportation is being withheld under section 243(h) of the INA as in effect prior to April 1, 1997, or whose removal has been withheld under section 241(b)(3) of the INA; or

> 7. An alien who is a "Cuban/Haitian entrant" under 501(e) of the Refugee Education Assistance Act of 1980 or in a status that is to be treated as a "Cuban/Haitian entrant" for SSI purposes.

*See* POMS SI 00502.100A(2)(a).  In addition to being a "qualified alien," the individual must

meet one of the following "exception conditions" to be found eligible:

> 1. Was receiving SSI on August 22, 1996 and is lawfully residing in the U.S. (grandfathered qualified alien);
>
> 2. Lawfully admitted for permanent residence in the U.S. with 40 Qualifying Quarters of earnings;
>
> 3. Veteran or active duty member of the U.S. Armed Forces, a spouse of veteran/active duty, or a dependent child of veteran/active duty;
>
> 4. Lawfully residing in the United States on August 22, 1996, and is blind or disabled; or
>
> 5. Alien in one of five designated alien status classifications, and the status was granted within seven years of the date he filed for SSI. The five classifications are: (a) refugee under section 2017 of the INA; (b) asylee under section 208 of the INA; (c) alien whose deportation is being withheld under section 243(h) of the INA whose removal has been withheld under section 24l(b)(3) of the INA; (d) "Cuban/Haitian entrant" under one of the categories in Section 50l(e) of the Refugee Education and Assistance Act of 1980 or alien in a status that is to be treated as a Cuban/Haitian entrant for SSI purposes, and; (e) "Amerasian immigrant" under section 584 of the Foreign Operations, Export Financing, and Related Programs Appropriations Act of 1988.
> POMS SI 00502.100A.

*See* POMS SI 00502.100A(3).

### C.    Analysis

As discussed above, the main dispute is whether the ALJ committed legal error in failing

to independently acquire immigration documents through a subpoena or other means.[2]  For his

---

[2]  Importantly, Plaintiff does not argue the ALJ's decision—given the record before her—was wrong.  To that end, the record is devoid of any documents that would establish Plaintiff is a qualified alien or meets any of the exception conditions.  Thus, substantial evidence supports the ALJ's conclusion that Plaintiff was not entitled to benefits.  *See, e.g., Alesina v. Barnhart*, No. 01CV2812(JG), 2002 WL 31409936, at *1 (E.D.N.Y. Sept. 30, 2002) (affirming an ALJ's decision to deny benefits application because the claimant did not qualify).

part, Plaintiff asserts the ALJ disregarded her affirmative obligation to develop the record on

Plaintiff's immigration status.  (Dkt. No. 16.)

However, as Defendant argues, the ALJ is under no such obligation and Plaintiff failed to

cite any statute, regulation or case suggesting the ALJ was required to assist in obtaining these

records.  (Dkt. No. 19 at 12.)  Rather, the cases Plaintiff cited are inapposite and all deal with

obtaining evidence relevant to the SSA's five-step sequential evaluation as opposed to eligibility

information.  *See Moran v. Astrue*, 569 F.3d 108, 113-15 (2d Cir. 2009) (involving whether the

ALJ adequately developed the relevant facts under the five-step sequential evaluation, and not

the threshold question of eligibility for SSI); *Butler v. Astrue*, 926 F. Supp. 2d 466, 480

(N.D.N.Y. 2013) (same).  This distinction is critical because immigration status is an objective

determination—proven with verifiable documents—whereas the question of whether an

individual is disabled involves weighing subjective and often conflicting medical opinions and

records.  In other words, eligibility relative to immigration status—like age—is a binary

decision.  Just as it would be unreasonable to impose a duty on the ALJ to independently

investigate a claimant's age if they did not produce a birth certificate, it does not make sense that

an ALJ should have a duty to determine immigration status for every non-citizen who fails to

submit the requisite information.  Thus, the general rule that an ALJ must develop the record

does not apply to this novel situation.[3]  Therefore, the Court finds the ALJ's failure to

---

[3]  Moreover, SSA regulations consistently stress it is the claimant's responsibility to provide the
necessary immigration documents.  *See* POMS SI 00502.100; POMS SI 00502.100A.2.a; POMS
SI 00502.130B.  The ALJ also emphasized that Plaintiff had to provide objective proof of his
immigration status.  (T. 21 (stating it is Plaintiff's "duty to get the papers"); 24 (explaining that
she needed "physical documentation" and it was not a "subjective" determination).)

independently seek Plaintiff's immigration documents was not legal error and is not a basis to order remand.[4]

Plaintiff also contends the ALJ erred because she disregarded his requests for a subpoena. (Dkt. No. 16 at 15.)  However, though the ALJ could have issued a subpoena, Plaintiff failed to properly request such a subpoena.  SSA regulations explain the appropriate process to request an ALJ subpoena.  *See* 20 C.F.R. § 416.1450(d)(2).  To that end, parties "must file a written request" that must: "give the names of witnesses or documents to be produced; describe the address or location of the witnesses or documents with sufficient detail to find them; state the important facts that the witness or document is expected to prove; and indicate why these facts could not be proven without issuing a subpoena."  *Id.*[5]  Here, rather than making a formal request, Plaintiff's attorney casually asked the ALJ whether she could obtain the records during the hearing and made a "suggestion" that the ALJ issue a subpoena in a letter.  (T. 20-21 (transcript); 164 (letter).)  The hearing dialogue and the letter were insufficient to trigger any action on the ALJ's part and the Court finds the ALJ's non-response was not legal error.

Plaintiff additionally argues that, because he used to receive SSI payments, there should be an "inference" of his eligibility.  (Dkt. No. 16 at 13.)  However, it makes no difference that

---

[4]  Implicit in Plaintiff's argument is the proposition that only the SSA and the ALJ can successfully obtain his immigration documents.  However, that is not the case.  As Plaintiff demonstrated, he could—and did—submit a FOIA request to obtain his documentation.  In his brief, Plaintiff describes his counsel's "efforts to obtain immigration documents" and asserts he filed a FOIA request with the U.S. Citizenship and Immigration Services ("CIS").  (Dkt. No. 19 at 6.)  Plaintiff's counsel received a letter dated March 15, 2018, from CIS noting it would need approximately 30-days until he could expect a response to his FOIA request.  (T. 160-61.)  Curiously, Plaintiff does not discuss the results of the FOIA request in his brief to this Court or in any correspondence to the SSA.  If he received favorable documents from DHS, he should have provided those to the Appeals Council or this Court.

[5]  SSA's letter to Plaintiff regarding his upcoming hearing with the ALJ described this process.  (T. 98.)

11

Plaintiff previously received SSI payments because he received those payments in error. (T. 67 (indicating Plaintiff's was previously mis-coded as a U.S. citizen); 32 (Plaintiff's current SSA application admitting he is not a U.S. citizen).) Moreover, Plaintiff makes a cursory comment about the ALJ's failure to insist on Plaintiff's testimony at the hearing, but it was Plaintiff's counsel who ultimately decided that his client should not testify. *Id.* at 24 (Plaintiff's attorney stating he would "prefer not to have [Plaintiff] testify"). These arguments, thus, provide no basis for the Court to disrupt the SSA's decision.

In light of the foregoing, the Court finds substantial evidence supports the ALJ's decision and she did not commit reversible legal error.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 16) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 19) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**, pursuant to Sentence Four of 42 § U.S.C. 405(g).

Dated: August 12, 2020
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge